(173 App. Div. 460)

## GRAHAM v. GRAHAM.

(Supreme Court, Appellate Division, Third Department.   June 30, 1916.)

DIVORCE ⚖⇒115—EVIDENCE—ADMISSIBILITY.

    In an action for divorce, where direct proof was introduced of an act of adultery between defendant, about 16 years old, and a corespondent, corroborative evidence that the corespondent was a lewd woman more than a year after the alleged adultery was inadmissible, since there is no presumption that a girl 15 or 16 years of age was a lewd woman at the time of the alleged adultery because she may have been one or two years later.

    [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 371–378; Dec. Dig. ⚖⇒115.]

Appeal from Special Term, Washington County.

Action for absolute divorce by Lottie C. Graham against Richard B. Graham.   From a judgment dismissing the complaint, and from an order denying a motion for a new trial, the plaintiff appeals.   Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOOD-WARD, and COCHRANE, JJ.

George W. Watkins, of Moriah, for appellant.
Frank B. Wickes, of Ticonderoga, for respondent.

WOODWARD, J.   The plaintiff brings this action for absolute divorce, and the only material fact admitted by the pleadings is the intermarriage of the parties.   There are several corespondents, and the learned court, hearing the case without a jury, made findings of fact and concluded as a matter of law that the complaint should be dismissed upon the merits.   The plaintiff appeals from the judgment entered upon this decision.

The plaintiff's case finds its only direct support in the testimony of one Norman Cooper, who swears that he witnessed four separate and distinct acts of adultery on the part of the defendant with two different women, and that all this happened without his watching the defendant, and that he never mentioned the matter for a period of some 12 or 13 years.   All of these alleged acts of adultery are disputed by the parties, and a number of witnesses testified that they would not believe this witness under oath, and a reading of the testimony shows that there must be substantial grounds for their attitude, for a more improbable story than that detailed upon the stand by this man could hardly be conceived.   Either the defendant and the corespondents were in the habit of cohabiting at sight and under circumstances which must have been so conspicuous as to have become the common knowledge of the community in which they resided, in which event direct corroboration would have been easily obtained, or these alleged adulterous acts were never committed; and we are fully persuaded that the learned trial court, upon the testimony of this witness, was not justified in finding as requested by the plaintiff.

The only other question to be determined is whether the court erred in excluding so-called corroborative evidence which might have com-

pelled belief in an obviously false statement. One Guy Anderson was called as a witness in behalf of the plaintiff, and was asked if he knew one Emma Belden. He replied that he did, that he had known her for many years, and that he had seen the defendant at her house on a few occasions, but he disclosed no facts tending to show any improper relations with this woman, merely that he had seen the defendant "go there after washings." He was then asked if he knew the reputation of this Emma Belden, and answered that he did. The defendant objected to the question at this time, and the objection was sustained. The plaintiff received an answer to the only question which was asked at this point—that the witness knew the reputation of Emma Belden, but no other question was asked, so that the record does not disclose any foundation for an erroneous ruling at this point. Whether her reputation was good or bad does not appear; no question was asked in that respect, and this may be passed over as of no consequence.

The witness Norman Cooper, whose testimony we have already referred to in a general way, had testified that in the month of August, 1901, he had seen the defendant in acts of sexual intercourse with one Violet King, on two separate occasions, in the horse barn used by the defendant; and Guy Anderson was recalled in behalf of the plaintiff, and testified that he had known Violet King for 13 or 14 years, perhaps longer, and that he had been in her company a good deal at some former time, and finally fixed this time as 12 or 13 years ago. He was then asked: "At that time did you know her to be a lewd woman." The court asked if this was the woman the witness Cooper testified he saw cohabiting with the defendant, and on being answered in the affirmative the court said:

"I think I will exclude that, because you have already made direct proof of intercourse between the defendant and this King girl. If that is so, what is the use of proving something else?"

Counsel responded that it was "simply to corroborate," and the court replied:

"That does not corroborate it. It might, if you had not made direct proof. if you were called upon to pass upon suspicious circumstances, and here you have made direct proof, and if that proof is true, then, of course, the other proof does not amount to anything. If that proof isn't true, then you haven't got any suspicious circumstances. I won't take it. It won't help me any. It might possibly, before a jury, be received."

Assuming that the witness Guy Anderson would have testified that he knew Violet King to be a lewd woman 12 or 13 years prior to the trial, which occurred on the 1st of September, 1915, how could this in any manner corroborate the testimony of Cooper that he had witnessed an act of sexual intercourse between the defendant and this woman in August, 1901? Taking the longest time mentioned as the basis for calculation, and subtracting 13 years from September, 1915, and we have the year 1902—September, 1902—or more than one year after the alleged adultery. There may be a presumption that a woman who was shown to be lewd in 1902 would continue so, but there is certainly no presumption that a girl 15 or 16 years of age, as Violet King is shown to have been in 1901, was a lewd woman in the latter

year, because she may have been such one or two years later. The testimony sought to be elicited did not reach to the time of the alleged adultery on the part of the defendant, and it could not properly have been brought out before a jury. It certainly could not have justified the court in giving character to an obviously false statement on the part of Cooper.

No objection or exception seems to have been taken to this attitude on the part of the court at the time, and no further effort was made to bring out evidence as to the character of this corespondent at the time when this alleged adultery occurred, so that we are unable to discover any error which would justify this court in ordering a new trial.

The judgment and order appealed from should be affirmed. All concur.